[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR MODIFICATION (DOCKET NO. 113)
Pursuant to Connecticut General Statute Section 46b-86 (a),[1]
on February 7, 2001, the defendant filed a motion for modification of alimony alleging a substantial change of circumstances.
A review of the judgment file and evidence introduced at the modification hearing revealed the following:
The parties' marriage was dissolved on October 22, 1996. A stipulation by the parties on that date was submitted, approved and incorporated by reference in the final decree. That judgment did not preclude modification.
The relevant terms of the parties' handwritten stipulation required that "[t]he husband will pay periodic alimony to the wife at the rate of $2,500 per month until the death of either party or the remarriage of the wife." The agreement further provided that the defendant pay as alimony an amount equal to 25% of all gross annual earned income in excess of $110,000. The plaintiff would receive a 45% interest in her husband's Mobil Corporation retirement account. Finally, the agreement required the defendant to maintain, a $300,000 insurance policy with the plaintiff as beneficiary for "so long as the husband is obligated to pay alimony to the wife."
Based upon the evidence presented this court makes the following findings of fact:
At the time of the dissolution the defendant was a corporate executive employed by New Breed Integrated Logistical Services in High Point, North Carolina. He was earning a net weekly wage of $1,512 after federal and state taxes and insurance deductions.[2]
Although qualified for his position as vice-president of marketing, the defendant did not "enjoy his tenure with New Breed. Nevertheless, he fully performed the tasks required by his contract. He even earned substantial bonuses each year. Unfortunately, at the end of a three-year period New Breed did not renew the defendant's contract. The termination was involuntary, albeit not a surprise and certainly welcome. The defendant has been unemployed since September 1999.[3]
Although he complains that a covenant not to compete with his former employer has minimized the available job opportunities, in the time between the defendant's termination and the commencement of this hearing, the defendant has made no attempt to secure new employment. He CT Page 15941-ep has not mailed any resumes. He has not engaged in networking. He has not contacted headhunter agencies. Indeed, he has not spent any time trying to find a job.
Furthermore, although finding a job providing for a $100,000 annual salary or better at the defendant's age might be time consuming under normal circumstances, the defendant has aggravated the task by moving 235 miles away from his former employment. Prior to his termination from New Breed, the defendant and his new wife purchased a home in Kure Beach, North Carolina, a small town located on the Atlantic shore.[4] The area he lives in, at least a three-hour drive from the state's commercial center, is remote from the job opportunities. According to the defendant's own testimony, the average salary in the area is approximately $30,000.
It is apparent that the defendant does not want to find lucrative employment. Instead he has devoted all his efforts to his life-long ambition, writing a novel. The defendant has never earned any significant income in that field. Nevertheless he is hopeful that his first novel will be a commercial success. He made a voluntary decision with respect to his career that might result in long-term benefits if he becomes a successful author. However, there is no evidence that writing is anything more than a dream. Indeed, the defendant's current vocation has resulted in economic loss rather than gain.
Even though the defendant does not work, he has significant expenditures. His financial affidavit lists weekly expenses that exceed $1,800. However, a majority of the defendant's listed expenses, including his alimony obligation, are born by his current wife who sold her first home in part to pay the defendant's outstanding obligations. The rest are the result of cash advances on his credit cards.[5]
Turning to the plaintiff, at the time of the dissolution the plaintiff was employed in a minimum wage sales position earning a net weekly wage of $267 after federal and state tax deductions.[6] Her subsequent employment history has been substantially less complex, but markedly steadier than the defendant's. Although a college graduate with a degree in graphic arts, she is currently employed as an office assistant for an oral surgeon. Her weekly wage is $394, an increase of nearly $7,000 yearly since the time of the dissolution. She is experiencing health problems that impact her ability to work.[7]
At least in terms of job function and pay, the plaintiff is nearing or has reached the maximum her skills will allow. She has little room for CT Page 15941-eq advancement in the field of medical office technician. Unfortunately, the plaintiff has consistently failed to work as a graphic artist, the area in which she received an advanced degree. Although she complains that she would need additional training to qualify in the current job market, she has chosen to take seminary courses rather than enhance her marketability. There is no evidence, however, that the plaintiff could ever secure a job as a graphic artist.
The plaintiff also lives in North Carolina. Due to careful savings and fortunate investments in the stock market, the plaintiff has managed to acquire more assets than has the defendant. She used the bulk of this money to purchase a home. The plaintiff claims significant expenditures. Her financial affidavit lists weekly expenses that exceed $1,396. But this amount is suspect since it obviously contains inflated estimates.[8]
Connecticut General Statutes 46b-86 (a) provides that "any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be altered or modified . . . upon a showing of substantial change in circumstances of either party." The defendant in his motion alleged that the "income of the Wife has significantly increased and the income of the Husband has significantly decreased as a result of the termination of his employment position."
Since the time of the judgment, the defendant had gone from a lucrative position as corporate business executive to a situation where he is an unemployed aspiring author. This definitely constitutes a change in circumstances. That is not, however, the end of the inquiry. That change must legally warrant a modification of alimony.
In determining whether that change warrants a modification of alimony, this court must consider a variety of elements. The central determining factor is the dissolution decree itself. That decree provided a clear and unequivocal requirement that the defendant pay a set amount of alimony for an unlimited duration of time.[9] The court has also weighed all other operative variables presented by the parties. They include the defendant's earning capacity, the degree to which the defendant's continued state of unemployment was voluntary and the lifestyle maintained by the defendant.
In the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. 230, 234 (1981). Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment, or choosing to pursue a new, heretofore-unsuccessful career, CT Page 15941-er certainly does not alter that capacity.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). Although the original termination was not totally voluntary, clearly, the defendant's continued unemployment is as a result of his changed priorities. Since he had sufficient assets to survive, he intentionally stopped working. Pursuit of his life long dream is not a substitute for active employment. It is appropriate, therefore, that the court consider the plaintiff's earning capacity in determining a proper alimony award. Miller v. Miller, 181 Conn. 610, 612-13, 436 A.2d 279
(1980); Hart v. Hart, 19 Conn. App. at 91.[10] The defendant is intentionally under-employed.[11]
Based on the defendant's own testimony regarding the positions that he held prior to his period of unemployment, this court finds that the defendant has attained a level of proficiency. He has worked successfully at major international corporations. He could obtain positions at levels of high responsibility that generated commensurately significant levels of compensation. The difficulty is determining an appropriate monetary amount. Neither party has provided totally reliable interpretations of the available financial information.
This court begins with the defendant's own admission that an average job in his current location would generate $30,000 per year. The court also takes into account the fact that the defendant, despite an absolute lack of income, has claimed expenses that exceed $90,000 per year.
The defendant wants the best of both worlds, the comfort of his current wife's income together with the benefit of sole credit for all expenses. Allowing the defendant this scenario would be unconscionable. Having considered both parties' financial evidence, it is the opinion of the court that the defendant has an earning capacity at the present time of $30,000. The court finds, however, that the defendant has no living expenses insofar as his current wife has chosen to subsidize his lifestyle. Therefore, that entire amount is available for alimony payments. Since the alimony available should the defendant choose to work would equal the existing order, the motion to modify alimony is denied.
The defendant has also requested a reduction in the cost of his insurance policies. The stipulation by these parties provided that the defendant must maintain a $300,000 insurance policy with the plaintiff as CT Page 15941-es beneficiary for "so long as the husband is obligated to pay alimony to the wife." The defendant is obligated to pay alimony "until the death of either party or the remarriage of the wife." This provision of the agreement, and the subsequent court decree, is clear and unambiguous. Since the plaintiff has neither died nor remarried, the defendant is required to maintain the insurance policy in full. No modification is allowed.
Orders shall enter on this motion as herein noted.
JULIA DICOCCO DEWEY, JUDGE